UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARC HIMMELSTEIN,

    Plaintiff,

        v.                          Civil Action No.  12-1475 (JEB)

COMCAST OF THE
DISTRICT, L.L.C., *et al.*,

    Defendants.

## MEMORANDUM OPINION

As the Court explained in an earlier Opinion, a $220 dispute over an unreturned cable

modem has mushroomed into a federal lawsuit involving complex issues of tort, federal debt-

collection laws, and preemption.  See Himmelstein v. Comcast of the District, LLC,

(Himmelstein I), --- F. Supp. 2d ---, 2012 WL 6103219 (D.D.C. Dec. 10, 2012).  To quickly

recap, Plaintiff Marc Himmelstein's failure to return a modem when terminating his cable

service ultimately led to a negative credit report and $26,000 in additional financing costs when

he refinanced his home.  He thus sued both Comcast and Credit Protection Association, L.P., a

collection agency.  Having granted in part and denied in part Comcast's first Motion to Dismiss

in Himmelstein I, the Court now reaches the same result with respect to CPA's Motion to

Dismiss: Count IV, Plaintiff's Fair Credit Reporting Act claim, survives, but Count III's

assertion of negligence is preempted by the FCRA and does not.

## I.      Background

According to the Amended Complaint, which must be presumed true at this stage,

Himmelstein was a long-time customer of Comcast, from whom he received residential cable

and high-speed internet service.  <u>See</u> Am. Compl., ¶¶ 9-10 & Exh. A (Comcast Agreement for

Residential Services).  When Himmelstein elected to terminate his contract around June 2010, a

Comcast technician came to his residence to remove the equipment, picking up the cable box,

but inadvertently leaving behind a modem.  <u>See</u> Am. Compl., ¶¶ 12-21.  In August 2010 he was

informed for the first time he owed Comcast approximately $220 for cable-modem equipment

that had not been returned.  <u>See id.</u>, ¶ 21.  "Shortly thereafter, Himmelstein received a demand

letter from a collection agency [CPA] seeking to recover, on Comcast's behalf, the alleged

$220.00 outstanding balance."  <u>Id.</u>, ¶ 23.  He then contacted Comcast again regarding the status

of the account and was told that the charge would be removed and corrected when he returned

the missing modem.  <u>See id.</u>  Himmelstein located the missing modem and returned it

immediately to Comcast.  <u>See id.</u>, ¶ 24.

      Himmelstein never received his refund check, however, and CPA continued to pursue

collection of the $220 balance.  <u>See id.</u>, ¶¶ 26-29.  The collection agency, moreover, reported the

debt to the national credit-reporting agencies in December 2010.  <u>See id.</u>, ¶ 28.  When

Himmelstein contacted CPA to dispute the debt, it acknowledged the error, ceased collection on

the account, and contacted Comcast to report the account for deletion – but never contacted the

national credit bureaus regarding the mistake.  <u>See id.</u>, ¶¶ 29-30.  At around the same time,

Himmelstein himself notified the national credit bureaus that he was disputing the debt.  <u>See id.</u>,

¶ 31.

      The following spring, Himmelstein sought to refinance his mortgage with Citibank.  <u>See</u>

<u>id.</u>, ¶ 30.  His credit report continued to reflect the Comcast debt, despite his repeated efforts to

redress the error with both Comcast and CPA.  <u>See id.</u>  Because of this outstanding debt,

Citibank required Himmelstein to pay an additional $26,000 (1% of the value of the mortgage)

for the same loan.  See <u>id.</u>, ¶ 32

In 2012, he filed this action, alleging several common-law counts against Comcast, as well as a violation of the Fair Credit Reporting Act and a common-law negligence claim against CPA.  In late 2012, the Court granted Comcast's Motion to Dismiss in part and narrowed the case against the both defendants.  Plaintiff's FCRA (Count IV) and negligence (Count III) claims survived the Motion, and Plaintiff filed an Amended Complaint (ECF No. 26), and CPA has now moved to dismiss the two counts against it.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  <u>Trudeau v. FTC</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 556 U.S. at 678 (internal quotation omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 555-56 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

In moving to dismiss, CPA contends both that Plaintiff's FCRA claim is facially deficient

and that his negligence claim is preempted.  The Court will discuss the two counts separately.

A.  FCRA Claim

In Count IV of the Amended Complaint, Plaintiff alleges that CPA violated the Fair

Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., by

> reporting a false debt to the national credit bureaus; failing to
> conduct a proper investigation into Himmelstein's dispute; failing
> to correct the false debt reported to the national credit bureaus
> despite acknowledgment that the information previously provided
> was inaccurate; failing to report to the national credit bureaus that
> Himmelstein disputed the accuracy and validity of the alleged
> debt; and failing to modify, delete or permanently block the
> inaccurate information.

See Am. Compl., ¶ 67.   Himmelstein contends that these actions violated § 1681s-2(b), which

imposes certain requirements on furnishers of credit information like CPA.  See id., ¶ 66.

Moving to dismiss, CPA argues that Himmelstein has failed to properly allege facts that would

trigger any legal duty running from CPA to Plaintiff under that section.  See Mot. at 3, 7-8.  The

Court disagrees.  While Plaintiff's pleadings could be more complete regarding the full sequence

of events, the facts as currently alleged and "all inferences that can be derived" from them,

Sparrow, 216 F.3d at 1113 (internal quotation marks and citation omitted), are sufficient to

provide CPA with "fair notice of the claim and the ground on which it rests."  Kingman Park

Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2)).

The Court will first address the FCRA and the duties it imposes on furnishers, then move

on to an analysis of the sufficiency of Plaintiff's allegations.

*1.  Duties of Furnishers*

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007) (internal citations omitted).  "As an important means to this end, the Act sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting 15 U.S.C. § 1681(a)(4)).  In addition to imposing duties on consumer reporting agencies (CRAs), "Section 1681s-2 [of the Act] sets forth '[r]esponsibilities of furnishers of information to consumer reporting agencies.'" Id. at 1154.  While the statute does not explicitly define "furnishers" of credit information, "'[t]he most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'" Chiang v. Verizon New England, Inc., 595 F.3d 26, 35 n.7 (1st Cir. 2010) (quoting H.R. Rep. 108-263, at 24 (2003)).  Neither party here disputes that CPA is a "furnisher" of information for FCRA purposes.

The FCRA imposes two sets of duties on furnishers, one under § 1681s-2(a) and one under §1681s-2(b).  The first "prohibits any person from furnishing information to a CRA that the person knows is inaccurate," and "any person who 'regularly and in the ordinary course of business furnishes information to one or more [CRAs]' must correct and update the information provided so that it is 'complete and accurate.'" Saunders v. Branch Banking and Trust Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008) (quoting 15 U.S.C. § 1681s-2(a)).  As to the second, "a furnisher incurs [additional duties] under § 1681s-2(b) if a consumer disputes the accuracy of information that the furnisher reports." Id.  "If a consumer notifies a CRA that he disputes the

accuracy of an item in his file, [the] FCRA requires the CRA to notify the furnisher of the

dispute." Id. (citing § 1681i(a)(2)).  Once notified, a furnisher must:

> (a)    conduct an investigation with respect to the disputed
> information;
>
> (b)    review all relevant information provided by the [CRA]
> pursuant to section 1681i(a)(2) of this title;
>
> (c)    report the results of the investigation to the [CRA]; [and]
>
> (d)    if the investigation finds that the information is incomplete
> or inaccurate, report those results to all other consumer
> reporting agencies to which the person furnished the
> information and that compile and maintain files on
> consumers on a nationwide basis . . . .

§ 1681s-2(b)(1).

Although "no private right of action under § 1681s-2(a)(3)" exists, Gorman, 584 F.3d at

1162, "'[t]he majority of courts that have considered the issue' have concluded that there is a

private cause of action under § 1681s-2(b). . . .  However, . . . courts have 'uniformly' concluded

that § 2(b) 'provides a private cause of action only if the furnisher received notice from a

consumer reporting agency, as opposed to the plaintiff alone, that the credit information was

disputed.'"  Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 11 (D. Mass. 2004) (citations omitted); see

also, e.g., SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 359 (3d Cir. 2011) ("[A]

private citizen wishing to bring an action against a furnisher must first file a dispute with the

consumer reporting agency, which then must notify the furnisher of information that a dispute

exists.  Only after this notification can the furnisher face any liability to a private individual.");

Chiang, 595 F.3d at 35 ("Although a consumer may dispute credit information directly to a

furnisher . . . the consumer has no private right of action if the furnisher does not reasonably

investigate the consumer's claim after direct notification."); Nelson v. Chase Manhattan Mortg.

Corp., 282 F.3d 1057, 1060 (9th Cir. 2002) ("It can be inferred from the structure of the statute

that Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished. . . .  But Congress did provide a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher."); Narog v. Certegy Check Servs., Inc., 759 F. Supp. 2d 1189, 1194 (N.D. Cal. 2011) ("A person may only sue a furnisher of information in court under [the] FCRA . . . if the person first disputes the derogatory mark with the Credit Reporting Agency . . . .") (emphasis in original).

There is no doubt, therefore, that CPA must have received notice of the dispute from the CRA, not just from Plaintiff, in order for Himmelstein to recover under § 1681s-2(b).

### 2.  *Sufficiency of Allegations*

The question here is whether Plaintiff must specifically plead that the CRA notified CPA of the disputed credit information.  Defendant urges the Court to adopt a hard line.  CPA argues that although Himmelstein pleads that he notified the national credit bureaus of the disputed debt, see Am. Compl., ¶ 31, and that he "immediately disputed the debt" when first contacted by Defendant, see id., ¶ 29, because he did not explicitly "allege, as [he] must, that the bureaus forwarded the dispute to CPA," Mot. at 8, Plaintiff does not state a claim under § 1681s-2(b).  Plaintiff responds that Defendant's view of the matter is too cabined.  See Opp. at 8-9.

While federal courts have been uniform in holding that a private right of action under the FCRA only exists where the furnisher is notified of the dispute by a CRA, they have taken a variety of approaches to the degree of precision with which a plaintiff must plead that said notification actually took place in order to state a claim under § 1681s-2(b).  Compare, e.g., Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517, 519-20 (N.D. Tex. 2003) (noting that while it is "clear from § 1681s-2(b)(1) that Plaintiff must indeed prove that . . . notification [from the

CRA to the furnisher] occurred to succed on his claims[,] . . . Plaintiff is not required to plead all elements of a *prima facie* case to avoid 12(b)(6) dismissal.  All that is required is fair notice of the claim and the ground on which it rests.") (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)), with Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 928-29 (N.D. Ill. 2000) (dismissing without prejudice to amend where plaintiff alleged he personally notified furnisher of dispute, but did not allege furnisher was notified by the CRA), and Ryder v. Washington Mut. Bank, FA, 371 F. Supp. 2d 152, 154 (D. Conn. 2005) (dismissing for failure to state a claim where plaintiff alleged only that he had contacted the furnisher, but did not allege that disputed claim was properly investigated upon notification by a CRA).  The Court believes Himmelstein has the better of this argument.

To begin, it is worth noting that CPA cites no authority – nor has the Court identified any – for the proposition that where the plaintiff has alleged notification of both the national credit bureaus and the furnisher, but does not explicitly allege that the CRAs notified the furnisher, he always fails to state a claim.  On the contrary, those cases where courts have dismissed for failure to plead notification by the CRA to the furnisher are readily distinguishable, as each involved a plaintiff who failed to plead any contact whatsoever with a CRA.  See, e.g., Elmore v. North Fork Bankcorporation, Inc., 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (dismissing for failure to state a claim where "plaintiff did not complain to the credit reporting agency . . . [but instead] . . . saw that the negative information came from the [furnisher] defendant, and went directly to the [furnisher] defendant"); Phrasavang v. Deutsche Bank, 656 F. Supp. 2d 196, 203 (D.D.C. 2009) (dismissing for failure to state a claim where "plaintiff fails to allege that he notified any consumer reporting agency of the 'wrongfully, improperly, and illegally reported negative information' that he claims the [furnisher] defendants provided");

Gibbs, 336 F. Supp. 2d at 12 ("In the instant case, Gibbs has not alleged that he contacted any credit reporting agency or that the agency, in turn, got in touch with any of the [furnisher] defendants.  Under such circumstances, a complaint brought under § 2(b) should be dismissed.").

Where a plaintiff pleads notice to the CRA, to also require an allegation that the CRA notified the furnisher seems overly formalistic.  As other courts have noted, the "FCRA is not merely a complex statutory scheme, but one that has been said to contain almost incomprehensibly complex provisions and esoteric structures," Narog, 759 F. Supp. 2d at 1195 (internal quotations omitted), such that "a layperson . . .  could not possibly have been expected to comply" with its procedural requirements.  Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438, 440 (D.N.J. 2010).  Plaintiff, nonetheless, not only appears to have "attempted to address the [problem] in a manner that most similarly-situated consumers would consider reasonable," id., but has also successfully complied with the requirements of the statute by notifying the national credit bureaus of the dispute.

In arguing that the case should be dismissed because Plaintiff alleged that he directly notified CPA, Defendant is asking the Court to ignore the above allegation that he also contacted the national credit bureaus.  This latter assertion is the critical one.  Under § 1681s-2(b), a furnisher's duties to investigate disputes and correct erroneous information are triggered "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title."  Id. (emphasis added).  Section 1681i(a)(2), moreover, requires that a CRA that receives notice from a consumer of a disputed debt "shall provide notification of the dispute to any [furnisher] . . . [including] all relevant information regarding the dispute" within "the 5-business-day period beginning" when the CRA receives such notice.  As a result, the only allegation missing from Plaintiff's Amended Complaint is that the national credit bureaus fulfilled their legal responsibility to notify CPA.

The Supreme Court, however, has held: "The law . . . [, however,] presumes that every man, in his private and official character, does his duty, until the contrary is proved; [and] it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption. . . ." Bank of United States v. Dandridge, 25 U.S. 64, 69-70 (1827); see also Cincinnati, N. O. & T. P. Ry. Co. v. Rankin, 241 U.S. 319, 327 (1916) ("It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law.  Such a carrier must comply with strict requirements of the Federal statutes or become subject to heavy penalties, and . . . in respect of transactions in the ordinary course of business, . . . it is entitled to the presumption of right conduct.").

The Court can see no reason why, given that Plaintiff is entitled to "all inferences that can be derived" from the Complaint, he is not entitled to this long-held, fundamental presumption. While Defendant may certainly introduce evidence at summary judgment that shows such notice did not actually occur, at this stage the Court is bound to grant Plaintiff the presumption that the credit bureaus complied with the FCRA and in fact notified CPA of the disputed debt.  This is particularly appropriate where Plaintiff could not independently know of such notification.  See Davis v. Trans Union LLC, 526 F. Supp. 2d 577, 585 (W.D.N.C. 2007) ("The Defendant, however, has not provided any authority, nor has the Court found any, to support the argument that a complaint is facially deficient under the FCRA if it fails to allege that a furnisher of credit information was contacted within five days of a credit reporting agency's receiving notice of a consumer's dispute.  Without the benefit of discovery at the pleading stage of litigation, the Plaintiff would presumably lack the [requisite] knowledge of whether Defendant received notice within five days, and adopting such a burdensome requirement would be contrary to the goals of notice pleadings.").  At summary judgment, however, Plaintiff must prove that such notice

10

actually occurred.  See, e.g., Markovskaya v. Am. Home Mortg. Servicing, Inc., 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) (granting summary judgment for defendant where "[t]here [was] no evidence . . . that any such agency contacted [the furnisher defendant] directly with respect to Plaintiff's account.  Indeed, the evidence provided by [defendant was] completely to the contrary"); Davis v. Md. Bank, No. 00-04191, 2002 WL 32713429, at *16 (N.D. Cal. June 19, 2002) (noting that CRA's statutory obligation to inform furnisher of consumer complaint is insufficient to trigger presumption of notice at the summary-judgment stage); Aklagi v. Nationscredit Financial, 196 F. Supp. 2d 1186, 1193 & n.5 (D. Kan. 2002) (granting summary judgment to furnisher defendant because only admissible evidence was testimony on behalf of furnisher defendant that it had not received notice through the proper channel).

While our Circuit has not weighed in on this dispute, the Court is in good company with other federal district courts in taking this approach and denying a motion to dismiss where there is no express allegation of notice from the CRA to the furnisher.  See, e.g., DiMezza v. First USA Bank, Inc., 103 F. Supp. 2d 1296, 1301 (D.N.M. 2000); Watson v. Trans Union Credit Bureau, No. 04-205, 2005 WL 995687, at *5 (D. Me. April 28, 2005) (permitting inference "that the credit reporting agency was complying with the clear and rather simple mandate of the law" and refusing to dismiss action "for want of a straw allegation [of communication between the CRA and the furnisher]").

In fact, other federal district courts have gone even further, holding that an FCRA "[p]laintiff is not required to plead all elements of a *prima facie* case to avoid 12(b)(6) dismissal." Carlson, 259 F. Supp. 2d at 520.  For example, in Vasquez-Garcia v. Trans Union de Puerto Rico, 222 F. Supp. 2d 150 (D.P.R. 2002), the plaintiff alleged that he had notified the CRA, but did not specifically plead that the CRA had complied with § 1681i(a)(2) and provided

notice of the dispute to the furnisher.  Id. at 158.  In denying the defendant's motion to dismiss, the Court observed that when "information [regarding the CRA's communications with the furnisher] is provided to plaintiff in discovery, it will become clear whether plaintiff will be able to adequately prove his claim . . . .  At this stage, it . . . is not necessary, nor possible, for the court to decide . . . whether plaintiff will be able to establish sufficient proof for his claim."  Id. at 158-59 (noting that while "plaintiff's amended complaint does not constitute a paragon of a well pleaded complaint, . . . the Court has an obligation to read the pleadings liberally, [and] . . . finds that the amended pleadings contain assertions which, if found eventually to be true, sufficiently state a claim").  Because Plaintiff has alleged "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face" – that is, he has pleaded facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" – the Court will deny Defendant's Motion as to Count IV and allow Plaintiff to proceed to discovery.  Iqbal, 556 U.S. at 678.

   B.  Negligence Claim

   Having determined that Plaintiff has pled a cause of action under the FCRA, the Court now turns to his negligence claim (Count III).  CPA argues that this count must be dismissed as preempted by the FCRA, and the Court agrees.

   "Federal law may preempt state law in three instances: (1) where Congress expressly indicates that the law is meant to preempt state law [i.e., express preemption]; 2) where federal law and state law conflict [i.e., conflict preemption]; and 3) where federal law occupies the entire legislative domain of an issue [i.e., field preemption]."  Davenport v. Farmers Ins. Grp., 378 F.3d 839, 842 (8th Cir. 2004) (internal citation omitted); see also Glade v. Nat'l Solid Waste Mgmt. Assoc., 505 U.S. 88, 98 (1992) (describing three types of federal preemption).  Of the three

forms of preemption, only the first is relevant here because the FCRA contains explicit

preemptive language.  In determining the scope of that preemptive language, the Court bears in

mind that "[t]he purpose of Congress is the ultimate touchstone."  Medtronic, Inc. v. Lohr, 518

U.S. 470, 485 (1996).

1.  <em>FCRA Preemption Provisions</em>

In this case, there are two statutory provisions to consider.  The original 1970 enactment

of the FCRA declined to generally preempt most companion state laws, but § 1681h(e) did

expressly preempt a limited number of state common-law claims.  It stated in relevant part:

"[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of

privacy, or negligence with respect to reporting of information against[, <em>inter alia</em>,] any . . .

person who furnishes information to a [CRA] . . . except as to false information furnished with

malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e) (emphasis added).  In

other words, certain common-law claims against furnishers of information were preempted

unless a plaintiff met the heightened standard of malice or willfulness.

In 1996, however, Congress amended the FCRA to impose new duties upon furnishers

such as CPA.  See Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, 110

Stat. 3009 (1996).  The 1996 amendment included a new preemption provision – Section

1681t(b)(1)(F).  The general preemption provision of § 1681t(b)(1)(F) was broader than the old §

1681h(e): "No requirement or prohibition may be imposed under the laws of any State . . . with

respect to any subject matter regulated under . . . [<em>inter alia</em>] section 1681s-2 of this title, . . .

relating to the responsibilities of persons who furnish information to [CRAs] . . . ."  Id.  Plaintiff,

furthermore, does not contest that his negligence claim stems from conduct that § 1681s-2

13

regulates.  See Am. Compl., ¶¶ 53-57 (outlining CPA's statutory duties under FCRA § 1681s-2

and alleging that CPA was negligent for "breach[ing] each of these duties").

    While the earlier 1970 provision – which still remains in the FCRA – only preempts a

narrow class of state common-law claims, the newer clause more broadly preempts "the laws of

any State."  In addition, the malice/willfulness requirement does not exist in the new statute.

Because the 1996 preemption section seems to swallow the 1970 one with respect to claims

against furnishers, reconciling the two is no easy matter.  See, e.g., Haynes v. Navy Fed. Credit

Union, 825 F. Supp. 2d 285, 298 n.14 (D.D.C. 2011) ("Over the years, 'courts have struggled to

reconcile an apparent conflict between the two preemption provisions.'") (citing Mark H. Tyson,

State Law Furnisher Liability Claims and the FCRA – the State of Confusion, 63 Consumer Fin.

L. Q. Rep. 19 (2009)).

    To decide the Motion, the Court must ultimately decide which provision applies.  Since

Plaintiff has pled willfulness, see Am. Compl., ¶ 69 ("CPA acted willfully and/or negligently in

failing to comply with its duties under the [FCRA].") (emphasis added), if the 1970 section

governs, no preemption occurs; on the other hand, under the 1996 section, Plaintiff's claim

would be preempted.

### 2.  *FCRA Preemption Approaches*

    Although the D.C. Circuit has not yet had to resolve how the two FCRA preemption

provisions apply to furnishers of information, other courts have employed at least three

approaches in endeavoring to do so.  Those approaches are commonly referred to as (1) the

"temporal approach," (2) the "statutory approach," and (3) the "total approach."  Plaintiff urges

the Court to adopt the statutory approach, and CPA argues for the Seventh Circuit's version of

the total approach.  See Mot. at 5-7; Rep. at 1-3; Opp. at 4-5.  Although CPA's argument

ultimately carries the day, the Court believes it instructive to address all three approaches in turn.

> a.   Temporal Approach

Under the "temporal approach," courts have reconciled the two statutory provisions by

holding that the newer one only preempts state claims arising after a furnisher of information

receives notice of a dispute, whereas the original provision only applies to claims prior to that

notice.  See, e.g. Vazquez-Garcia, 222 F. Supp. 2d at 161 (settling upon temporal approach to

"avoid any construction that nullifies one section [of the FCRA] or causes it to be superfluous");

Aklagi, 196 F. Supp. 2d at 1194-1196; Bank One, N.A. v. Colley, 294 F. Supp. 2d 864, 869

(M.D. La. 2003).  Some courts have criticized this approach – rightly, it would appear – as

perversely affording "a furnisher of information more protection from exposure to liability for

acts committed after receiving notice of dispute than for acts committed before such notice."

Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1375 (N.D. Ga. 2004) (citation omitted);

see also Manno v. Am. Gen. Fin. Corp., 439 F. Supp. 2d 418, 429 (E.D. Pa. 2006) (same);

Barnhill v. Bank of Am., N.A., 378 F. Supp. 2d 696, 702 (D.S.C. 2005).  The FCRA, moreover,

contains no clear textual language to support such a construction, and neither the parties nor any

Circuit has endorsed it.  The Court, therefore, also declines to adopt the temporal approach.

> b.   Statutory Approach

The statutory approach – argued for by Plaintiff – proposes a slightly more attractive

construction.  That theory holds that Congress intended the new FCRA provision's preemption

of "the laws of any state" to preempt only state statutes, but not state common law.  See, e.g.,

Manno, 439 F. Supp. 2d at 429 ("[T]he statutory approach is the one most consistent with a close

analysis of the statutory text and with the congressional intent underlying [the newer preemption

provision].""); <u>Barnhill</u>, 378 F. Supp. 2d at 703 (implementing statutory approach and relying in

part on "the canon requiring the specific statute to prevail over the general statute"); <u>Johnson</u>,

351 F. Supp. 2d at 1376 (same).  Were the Court to adopt the statutory approach, neither the

1970 provision nor the 1996 one would preempt Plaintiff's negligence count because his is a

common-law claim and he has alleged willfulness.

      The Seventh Circuit in <u>Purcell v. Bank of Am.</u>, 659 F. 3d 622 (7th Cir. 2011), however,

underscored a notable defect with the statutory approach's construction of the FCRA's

preemption provisions.  There, the district court had held that Congress intended the word "laws"

in the newer provision to preempt state statutes only, while "leaving claims based on state

common law free to proceed."  <u>Id.</u> at 623.  Overruling that interpretation, the Seventh Circuit

stressed the uncanny similarity of the statutory approach's interpretation of "laws" to the one

long rejected by the <u>Erie</u> Doctrine.  It explained:

> [T]he district court's conclusion that the word "laws" in a federal
> statute refers to state statutes but not state common law produces a
> sense of déjà vu.  This is how <u>Swift v. Tyson</u>, 41 U.S. 1, 16 (1842),
> understood the word "laws" in the Rules of Decision Act . . . .  But
> <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938), overruled <u>Swift</u> and
> held that a reference to state "laws" comprises all sources of legal
> rules, including judicial opinions.  It is hard to see why the
> judiciary should again tread <u>Swift</u>'s path.  Many modern decisions
> about preemption follow <u>Erie</u> and hold that a federal statute
> preempts state common law to the same extent as it preempts state
> statutory law.

<u>Id.</u> at 623-24.  The Seventh Circuit, additionally, responded to many courts' reliance upon the

specific-over-general canon of statutory construction in their adoption of the statutory approach,

explaining,

> [I]t can be hard to determine which [preemption provision] is more
> specific . . . .  [E]ach statute is more specific in one respect and
> more general in another.  The specific-over-general canon . . . does

> not offer a good reason to depart from the norm that courts do not
> read old statutes to defeat the operation of newer ones.

Id. at 626.

Congress, moreover, could have specifically signaled with explicit language that the new preemption provision only referred to state statutory law if that had been its intent, but it declined to do so.  In fact, the Supreme Court has held that the use of the introductory phrase "no requirement or prohibition" in the preemption provision of another federal statute – the precise language employed by § 1681(b)(1)(f) – telegraphed Congress's intent to preempt all laws, not just statutory law.  See Cipollone v. Ligget Group, Inc., 505 U.S. 504, 521 (1992) (statute's use of phrase "'[n]o requirement or prohibition' . . . sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules").  While the statutory approach holds more appeal than the temporal one, it likewise possesses defects that render the Court wary of adopting it.

> c.  Total Approach

Under the total approach – argued for by CPA – courts have held that the new preemption provision preempts all related state-law causes of action against furnishers, even willful violations of state common law.  See, e.g., Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 362 (E.D. Pa. 2001) (holding that new preemption provision "clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting"); Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228, 1234 (D. Wyo. 2002) (same).  At least one opinion in this District appears to endorse the approach.  See Adams v. Martinsville Dupont Credit Union, 573 F. Supp. 2d 103, 118 (D.D.C.

2008) (defamation claim against furnisher preempted by FCRA even though complaint alleged "malice and/or willful intent to injure").

Courts that have rejected the total approach often stress that it judicially "repeals" the earlier preemption provision in spite of Congress's decision to retain it in the FCRA. See Manno, 439 F. Supp. 2d at 424 ("Repeals by implication are not favored.  In the absence of a clear and manifest legislative intent to repeal, statutes that appear to conflict must be read, if possible, to give effect to each.") (quoting Watt v. Alaska, 451 U.S. 259, 267 (1981)); Johnson, 351 F. Supp. 2d at 1374 ("[T]o imply Congress's intent to repeal a previously existing provision in the statute without a clear statement in the amendment to that effect is an unwieldy act of legislation that this court ought not and will not undertake.").

The Seventh Circuit in Purcell, however, addressed the "repeal by implication" critique. There, the Seventh Circuit rejected "any inconsistency between the two statutes."  659 F.3d at 625.  Rather, it reasoned,

> Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims.  Section 1681h(e) does not create a right to recover for willfully false reports; it just says that a particular paragraph does not preempt claims of that stripe . . . . The extra federal remedy in § 1681s-2 was accompanied by extra preemption in § 1681(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges.  Reading the earlier statute . . . to defeat the later-enacted system . . .  would contradict fundamental norms of statutory interpretation.

> Our point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication.  It is that the statutes are compatible: the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more . . . . This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F).  When it drops out, § 1681h(e) remains.  But even if our understanding creates

> some surplusage, courts must do what is essential if the more
> recent enactment is to operate as designed.

Id. (emphasis in original).  The Second Circuit, moreover, subsequently adopted that reasoning.

See Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 48 (2d Cir. 2011) ("[T]he

operative language in [the earlier] § 1681h(e) provides only that the provision does not preempt a

certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F)

from accomplishing a more broadly-sweeping preemption.") (citing Purcell, 659 F. 3d at 625).

        This Court ultimately finds the reasoning set forth in Purcell and Macpherson persuasive.

While the Court acknowledges that a handful of district judges in other circuits still appear to

apply the statutory approach, none of those opinions directly renounces – or even mentions – the

recent decisions of the Seventh and Second Circuits.  Those two decisions are, furthermore,

almost the only Circuit decisions to engage in a detailed analysis of the issue, they are the most

recent ones, and their discussion convinces the Court.

        In resisting this outcome, Plaintiff cites cases that interpret statutes other than the FCRA,

including multiple cases from the D.C. Court of Appeals.  See Opp. at 5.  As correctly noted by

CPA, "When interpreting a federal statute, federal courts apply the federal standards of

construction, not those applied by state courts."  Rep. at 2; see also Miss. Band of Choctaw

Indians v. Holyfield, 490 U.S. 30, 43 (1989) ("[T]he meaning of a federal statute is necessarily a

federal question . . . [that] remains subject to [The Supreme] Court's supervision . . . ."); Charvat

v. GVN Mich., Inc., 561 F.3d 623, 630 n.6 (6th Cir. 2009) ("The issue before us is the

interpretation of a federal statute.  We therefore are not bound by decisions of the state courts . . .

interpreting the federal [statute]."); Stein v. Paradigm Mirasol, LLC, 586 F.3d 849, 854 (11th

Cir. 2009) (interpretation of federal statute "is a matter of federal law" subject to "principles of

statutory interpretation from federal decisions").  The one D.C. Circuit case cited by Plaintiff,

19

Smither & Co. v. Coles, 242 F.2d 220 (D.C. Cir. 1957), moreover, is inapposite since it concerns a federal workers' compensation statute.  Plaintiff's non-FCRA cases, consequently, do not persuade the Court to deviate from the Seventh Circuit's sound approach to interpreting the FCRA's preemption provisions.

Because Plaintiff's negligence claim against CPA is premised solely upon conduct that § 1681s-2 directly regulates, and the FCRA expressly preempts state causes of action arising from that conduct, the Court will dismiss Count III.

## IV.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order this day denying CPA's Motion to Dismiss as to Count IV and granting the Motion as to Count III.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge


Date:   March 20, 2013